

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 26, 2013**

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CRAIG WALLACE, JR. and | § | Case No. 12-50435-RLJ-7 |
| TRACEY O. WALLACE, | § | |
| | § | |
| Debtors. | § | |
| | § | |
| LUBBOCK NATIONAL BANK, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 13-05003-RLJ |
| | § | |
| CRAIG WALLACE, JR. and | § | |
| TRACEY O. WALLACE, | § | |
| | § | |
| Defendants. | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lubbock National Bank (LNB), filed its motion for summary judgment in the above-styled adversary seeking a nondischargeable judgment pursuant to § 523(a)(2)(B) of the Bankruptcy Code for the claim it holds in the bankruptcy case. Defendants, Craig Wallace, Jr. and Tracey Wallace, also co-debtors in the chapter 7 bankruptcy proceeding, filed their response opposed to LNB's motion for summary judgment.

## STATEMENT OF FACTS

Mr. and Mrs. Wallace filed for chapter 7 bankruptcy on November 1, 2012 in case number 12-50435-rlj. Mr. and Mrs. Wallace own 70% of Craig Wallace Construction (CWC), while Quantum Diversified Holdings, Inc. owns 30%, which is also owned at least in part by the Wallaces. Compl. to Den. Discharge Ex. 13, Case No. 13-05003-rlj [Docket No. 1]; Statement of Fin. Affairs, Case No. 12-50435-rlj [Docket No. 23].

This adversary proceeding specifically concerns the following loans:

| Date | Amount | Lender | Borrower/Guarantor | Loan Number |
|---|---|---|---|---|
| 5/31/2005 | $100,000.00 | Craig Wallace, Sr. | CWC | |
| 7/31/2005 | $275,000.00 | Craig Wallace, Sr. | CWC | |
| 5/23/2006 | $200,000.00 | Phil Wolfe | CWC | |
| 11/23/2006 | $200,000.00 | Phil Wolfe | Craig Wallace, Jr. | |
| 5/23/2007 | $200,000.00 | Phil Wolfe | Craig Wallace, Jr. | |
| 9/27/2007 | $1,000,000.00 | LNB | CWC/ Craig Wallace, Jr. | #8789000 |
| 2/15/2008 | $1,143,730.08 | LNB | Craig Wallace, Jr. | #40120000 |
| 7/22/2008 | $590,000.00 | LNB | Craig Wallace, Jr. | #40518400 |
| 10/2/2008 | $993,000.00 | LNB | Craig Wallace, Jr. | |
| 10/1/2009 | $300,000.00 | Phil Wolfe | Craig Wallace, Jr. | |
| 10/22/2009 | $250,000.00 | Phil Wolfe | Craig Wallace, Jr. | |
| 10/28/2009 | $1,500,000.00 | LNB | CWC/Craig Wallace, Jr. | #41415400 |

Pl.'s App. in Supp. of Mot. And Br. In Supp. of Summ. J. at A3, A25–30, A34–40, A49–57.

**PAGE 1**

LNB claims that Mr. and Mrs. Wallace provided false financial statements dated May 31, 2007, May 31, 2008, and June 30, 2009 that LNB relied upon in determining whether to lend money to Mr. Wallace or CWC. *See id.* at A31–38, A42–48, A60–67. Specifically, LNB alleges a series of loans from Craig Wallace, Sr. (Mr. Wallace's father) and Phil Wolfe to Mr. Wallace and CWC were not included in the financial statements, and the loans from LNB would not have been made had the loans been disclosed.

According to the affidavit of Paul Dannevik of LNB, Mr. Wallace approached LNB about obtaining a line of credit for CWC, and LNB requested certain information, including a personal financial statement from both Mr. and Mrs. Wallace; they submitted a joint financial statement, prepared by an accountant, William Love, and signed by both Mr. and Mrs. Wallace. *Id.* at A4–8, A31–33. The one-page financial statement contains no direct references to loans by Craig Wallace, Sr. or Wolfe. *Id.* at A33. The liabilities section includes a line item "Personal Loan" in the amount of $400,000, and it lists an interest in CWC as an asset valued at $1,000,000. *Id.* No summary judgment evidence addresses whether the value of CWC is accurately stated or if its value reflects the loans from Craig Wallace, Sr. and Wolfe to CWC.

Mr. Wallace testified in his deposition that he could not say whether or not he specifically told LNB about the money borrowed from Wolfe, but in his affidavit he stated, "On several occasions, the dates of which I am unclear, I recall mentioning to Mr. Dannevik the fact that my father, Craig Wallace, Sr. and Mr. Phil Wolfe had helped finance a portion of the business and that the statements from Mr. Love should have reflected such loans if any remained unpaid." Def.'s App. at A2; Pl.'s App. at A20–21. The affidavit of Wolfe denies that Mr. Wallace has paid back anything on any of his loans. Pl.'s App. at A13. Mr. Wallace also acknowledged that he has not paid back his father in regard to at least one of the loans. *Id.* at A18.

PAGE 2

Following the submission of the financial statement, LNB issued the September 27, 2007 line of credit to CWC in the amount of $1,000,000, which was guaranteed by Mr. Wallace, and the February 15, 2008 loan to Mr. Wallace personally for $1,143,730.08.

In the summer of 2008, LNB requested and received a new personal financial statement from Mr. and Mrs. Wallace, which showed an interest in CWC, valued at $10,700,000, and contained no express references to loans by Wolfe or Craig Wallace, Sr.  *Id.* at A44.  The "Personal Loans" line item of $400,000 listed in the 2007 financial statement was not included in the 2008 statement.  *Id.* at A33, A42–48.  Following the receipt of the 2008 financial statement, LNB issued personal loans to Mr. Wallace for $590,000 on July 22, 2008 and a real estate lien note for $993,000 on October 2, 2008.  *Id.* at A49–55.  LNB alleges via Mr. Dannevik's affidavit that it relied on the financial statement along with his loan history in deciding to approve the loan requests.  *Id.* at A5–6.

In Fall 2009, LNB again requested an updated financial statement from Mr. and Mrs. Wallace.  *Id.* at A60–67.  It did not specifically reference loans from Wolfe or Craig Wallace, Sr.  *Id.*  This financial statement was more detailed than previous submissions, including an analysis of CWC, which was listed as an asset of $10,000,000 with current liabilities and long-term debt at a combined $9,761,848 and a net equity of $1,943,274.  It did not break down the current liabilities or long-term debt, so it is uncertain whether any of CWC's liabilities to Craig Wallace, Sr. or Wolfe are included.  The statement contains no disclosure of the four personal loans from Wolfe to Mr. Wallace, which totaled $950,000.  According to Mr. Dannevik's affidavit, Mr. Wallace never informed LNB of the Wolfe loans made on October 1, 2009 and October 29, 2009, which occurred within the days prior to LNB issuing a loan to CWC.  Following this

financial statement, LNB made a final loan to CWC in the amount of $1,500,000, which was personally guaranteed by Mr. Wallace.

Eventually, CWC and Mr. Wallace fell behind, and LNB foreclosed on the collateral securing the loans. *Id.* at A6. LNB claims that Mr. Wallace remains indebted to them in excess of $2.6 million. *Id.* LNB has not provided a breakdown of the outstanding amount on each loan.

Mr. Dannevik states that LNB would not have loaned Mr. Wallace or CWC money had the Wolfe and Craig Wallace, Sr. loans been disclosed. *Id.* at A7. He asserts that there was no way through reasonable diligence that LNB would have learned of these outside loans, which LNB only became aware of after the loans were in default. *Id.*

## DISCUSSION

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, and other matters presented to the court show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 255. A factual dispute bars summary judgment when the disputed fact is determinative under governing law of the issue before the court. *Id.* at 250. The movant bears the initial burden of articulating the basis for its motion and identifying evidence which shows that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322. The respondent may not rest on the mere allegations or denials in its pleadings but must set forth specific facts showing

there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

The parties agree that LNB must prove the debt is nondischargeable by a preponderance of the evidence. Pl.'s Br. in Supp. of MSJ, p 7; Def.'s Br. in Supp. of Resp. to MSJ, p 2. To obtain summary judgment, LNB must show that Mr. and Mrs. Wallace received money, property, services, or an extension, renewal or refinancing of credit by use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive. 11 U.S.C. § 523(a)(2)(B).

### A. Receipt of Money, Property, Services, or an Extension, Renewal, or Refinancing of Credit

By the express terms of the LNB loans, it is clear that CWC and Mr. Wallace, personally, obtained money from LNB. Section 523(a)(2)(B) requires that the money was obtained by utilizing the written statement in question. LNB requested a personal financial statement for Mr. and Mrs. Wallace before a loan was ever issued and requested the subsequent financial statements prior to making additional loans. Pl.'s App. at A4–8, A31–33. LNB issued five loans totaling more than five million dollars to Mr. Wallace or CWC (with Mr. Wallace as personal guarantor on the loans to CWC).

### B. Materially False Statement

In a § 523(a)(2)(B) action, the Fifth Circuit considered what constituted a "materially" false statement. The court said:

> A materially false statement is one that "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." Further, in determining whether a false statement

> is material, a relevant although not dispositive inquiry is "whether the lender would have made the loan had he known the debtor's true situation." Finally, it is well-established that writings with pertinent omissions may qualify as "materially false" for purposes of § 523(a)(2)(B).

*In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991) (internal citations omitted), *overruled on other grounds by In re Coston*, 991 F.2d 257, 259 (5th Cir. 1993).

The 2007 financial statement contains a line item for a personal loan of $400,000. It makes no specific disclosure of the loans from Wolfe to Mr. Wallace or of the two loans from Craig Wallace, Sr. to CWC. The statement reflects Mr. Wallace's interest in CWC at $1,000,000, but there is no evidence demonstrating the accuracy of this valuation or whether it includes the Craig Wallace, Sr. or Wolfe loans to CWC. LNB has not offered sufficient evidence that this statement was materially false. The "Personal Loans" of $400,000 match the amount loaned at that time by Wolfe to Mr. Wallace personally. Further, a material issue of fact remains concerning the accuracy of the value of Mr. Wallace's interest in CWC.

The 2008 and 2009 financial statements make no arguable reference to the $400,000 of personal loans from Wolfe to Mr. Wallace. They make no specific reference to any loans from Craig Wallace, Sr. or Wolfe to CWC, though it has not been established whether they are included in the value of CWC. In the 2008 statement, CWC is listed as an investment valued at $10,700,000; in the 2009 statement, CWC is listed as an investment valued at $10,000,000 with a net equity of $1,943,274. Mr. Wallace alleges that he mentioned the loans to Mr. Dannevik and that he also provided Mr. Love with information regarding the loans. Def.'s App. at A7. Mr. Love testified in his deposition that Mr. Wallace "didn't submit any information about Phil Wolfe to me." Pl.'s App. at A24.

What Mr. Wallace initially told Mr. Dannevik or Mr. Love is irrelevant to whether he provided a false financial statement to the bank. The second financial statement failed to

**PAGE 6**

disclose $400,000 in personal loans from Wolfe. The third financial statement likewise failed to disclose the personal loans, nor did Mr. Wallace inform the bank that the financial statement he provided did not include an additional $550,000 of personal loans made by Wolfe in the days preceding the issuance of LNB's last loan, resulting in $950,000 of undisclosed personal loans. An omission of an additional $400,000 to $950,000 of outside loans is material and could certainly affect whether a financial institution would be willing to extend a line of credit or loan to a borrower.

LNB's summary judgment evidence shows by a preponderance of the evidence that the second and third statements were materially false; an issue of material fact remains regarding the first financial statement and whether the value of CWC was accurate.

### C. Respecting the Debtor's or an Insider's Financial Condition

The financial statements specifically address the Wallaces' assets, liabilities, and net worth. On their face, they address Mr. and Mrs. Wallace's financial condition and satisfy this element of § 523(a)(2)(B).

### D. Creditor's Reasonable Reliance

Next, LNB must show that they reasonably relied on Mr. and Mrs. Wallace's financial statements. The Fifth Circuit addressed the reasonable reliance element in the *Coston* case. The court said this factual determination should be based on the totality of the circumstances. 991 F.2d at 261. Specifically, the court stated that a court may consider, among other things (1) whether there were previous business dealings that created a relationship of trust; (2) whether any "red flags" existed that would alert an ordinarily prudent lender that the representations might not be accurate; and (3) whether minimal investigation would have revealed that the debtor's representations were inaccurate. *Id.* "A creditor is not required to assume that a debtor

is lying or misrepresenting the facts in a financial statement." *In re Morrison*, 361 B.R. 107, 123 (Bankr. W. D. Tex. 2007). Additionally, some other circuits have considered whether the creditor followed its standard practices in evaluating the creditworthiness and the creditor's industry's customs or standards in determining creditworthiness. *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995); *First Nat'l Bank v. Pontow*, 111 F.3d 604 (8th Cir. 1997); *In re Trimble*, 482 B.R. 546, 555–556 (Bankr. N.D. Miss. 2012) (applying the additional standard from *In re Cohn*). This is, however, not binding precedent in the Fifth Circuit.

Prior to Mr. Wallace requesting a line of credit from LNB, there are no facts that would give rise to a relationship of trust. No ongoing business or personal relationship existed among the parties. The evidence before the Court indicates that Mr. Wallace had been introduced to Mr. Dannevik by a current customer and that they discussed Mr. Wallace potentially looking for a new bank. Pl.'s App. at A5. After the first loans were issued, a relationship of trust could have potentially arisen. Mr. Wallace and CWC serviced the loans per the terms of the agreements, and there was no reason for LNB to question Mr. Wallace's veracity on the subsequent financial statements.

Before the Court, there is no evidence that "red flags" existed at the time the loans were issued, which should have alerted the bank to inaccuracies of the financial statement. Mr. Dannevik stated the bank saw regular infusions of capital into the accounts in question and believed that CWC and Mr. Wallace had additional income. Pl.'s App. at A7–8. The financial statement contained no obvious errors, and nothing within the context of the statement should have alerted LNB to the omission of other loans.

LNB did not discover the existence of the loans until default had occurred and its attorneys and investigators were specifically seeking to determine whether fraud had occurred in

connection with state court litigation. *Id.* at A7. The loans from Wolfe and Craig Wallace, Sr. were neither filed nor was information indicating their existence readily available to anyone outside of the Wallaces and Wolfe. LNB had no reasonable method to uncover the existence of the loans.

Even taking as true Mr. Wallace's affidavit, which is far more unequivocal than his deposition testimony, that he informed Mr. Dannevik that Craig Wallace, Sr. and Wolfe had given him financial assistance, LNB has still satisfied this element. The initial financing statement listed $400,000 in personal loans, which could be thought to reference any loans from Wolfe or Craig Wallace, Sr.

There is no evidence that LNB had reason to look further for undisclosed loans on any of the financial statements or that it was not reasonable for them to rely on the statements provided by Mr. and Mrs. Wallace.

### E. Intent to Deceive

To determine if LNB has met its summary judgment burden to satisfy the intent element, the Court must consider whether the evidence shows an intent to deceive or a reckless disregard for the truth or falsity of the information. In evaluating this element, a court may consider the totality of circumstances. *Morrison*, 555 F.3d 473, 482 (5th Cir. 2009); *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994). The requisite intent may be "inferred from use of a false financial statement." *In re Morrison*, 555 F.3d at 482. "Reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation may combine to produce the inference of intent [to deceive]." *Norris v. First Nat'l Bank in Luling (In re Norris)*, 70 F.3d 27, 30 n.12 (5th Cir. 1995) (quoting *Miller*, 39 F.3d at 305). Attribution of intent from

one spouse to the other has been rejected by the Fifth Circuit. *In re Reed*, 700 F.2d 986, 993 (5th Cir. 1993).

LNB points to no evidence showing Mrs. Wallace's intent to deceive or reckless disregard for the truth or falsity of the statement, other than that she signed the financial statements which did not disclose the loans to Mr. Wallace or CWC. There is no evidence showing whether Mrs. Wallace even knew of the existence of the loans from Wolfe and Craig Wallace, Sr.; she is neither a borrower nor a guarantor of these loans.

Mr. Wallace's affidavit states he had conversations with Mr. Dannevik about the financing from Wolfe and Craig Wallace, Sr. and that he sent all his information to Mr. Love, so if he owed anything on those loans, it should have been reflected in the financial statements that Mr. Love prepared. Mr. Wallace's deposition testimony provided as summary judgment evidence shows far less certain statements about whether he informed LNB of the loans in any way other than alleging that they should have been included in the financial statements prepared by Mr. Love. LNB has presented evidence in the form of affidavits by Mr. Dannevik and Mr. Love that Mr. Wallace neither had any conversations about the loans nor provided information regarding them for use in the financial statements.

Even considering Mr. Wallace's affidavit and deposition testimony in the light most favorable to him, the Court finds that the totality of the evidence shows Mr. Wallace possessed an intent to deceive or a reckless disregard for the truth or falsity of the financial statement. Mr. Wallace's second financial statement failed to disclose $400,000 in personal loans, and his third financial statement was provided to the bank without disclosing $950,000 in personal loans. He claimed that if he owed the money, Mr. Love should have put it on the financial statements, but that is simply further evidence that Mr. Wallace, at the least, displayed an extreme recklessness

for the truth of the financial statements that he signed and submitted to the bank in his efforts to obtain additional financing. This showing of recklessness combined with the magnitude of these misrepresentations is telling. The Court finds the summary judgment evidence demonstrates Mr. Wallace displayed the requisite intent to deceive when he provided the second and third financial statements.

    **F. The Wallaces' remaining arguments opposing summary judgment.**

The Wallaces also allege that summary judgment should be denied because LNB has failed to account for proper offsets, payments, and credits. In the Wallaces' brief, they cite Texas state law for the principle that "a party who opposes a summary judgment by asserting an affirmative defense of offset, payment, or credit, must offer competent summary judgment proof to support its allegation concerning specific offset amounts, specific credits, or specific instances of payment." Def.'s Br. In Supp. of MSJ at 9 (citing *Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 611 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). The Wallaces then proceed to argue that LNB sold property belonging to them but has not provided an accounting of proper offsets or credits. *Id.* at 10. The Wallaces fail to follow the case law to which they cite by not providing summary judgment evidence of any "specific offset amounts, specific credits, or specific instances of payment" that were not properly applied. *See Manges*, 596 S.W.2d at 611.

Simply alleging, with not supporting evidence, that LNB has failed to provide an accounting of offsets is not sufficient evidence of specific errors such that it would block summary judgment. LNB has not, however, provided the Court with evidence of what amount remains owing on each individual loan after the appropriate offsets were made, which prevents the Court from making a final determination of what amount of debt would be non-dischargeable.

**CONCLUSION AND ORDER**

After reviewing the motions, briefs, and evidence submitted to the Court and considering counsels' arguments, the Court denies in part and grants in part LNB's motion for summary judgment. It is, therefore,

ORDERED that summary judgment against Mrs. Wallace is denied in regard to each loan;

ORDERED that summary judgment against Mr. Wallace in regard to the September 27, 2007 and February 15, 2008 loans is denied as issues of material fact remain regarding the value of the interest in CWC listed on the first financial statement;

ORDERED that summary judgment against Mr. Wallace in regard to the July 22, 2008, October 2, 2009, and October 29, 2009 loans from LNB to Mr. Wallace and CWC is granted and the remaining outstanding balances on these loans are non-dischargeable. The Court will not make a specific finding at this time as to the total amount that is non-dischargeable as there is insufficient evidence before the Court to determine what remains outstanding on each note.

### End of Memorandum Opinion and Order ###